# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania | : |
| | : |
| v. | : No. 1382 C.D. 2015 |
| | : |
| $603.45 Cash (Brandon Severns & Richard Russell) | : |
| $446.00 Cash (Brandon Severns & Richard Russell) | : |
| Contents For Store-Miscellaneous Drug Paraphernalia, | : |
| Smoking Devices and Accessories, Scales, Glass | : |
| Vilas (Brandon Severns & Richard Russell) | : |
| HP Touch Smart Computer | : |
| (Brandon Severns & Richard Russell) | : |
| HP Computer (Brandon Severns & Richard Russell) | : |
| HP Office Jet Printer | : |
| (Brandon Severns & Richard Russell) | : |
| Xbox 360 and Controllers | : |
| (Brandon Severns & Richard Russell) | : |
| Label Maker and Scanners | : |
| (Brandon Severns & Richard Russell) | : |
| Phillips TV (Brandon Severns & Richard Russell) | : |
| Two Shelving Units (Brandon Severns & Richard | : |
| Russell) | : |
| Electronic Surveillance Equipment | : |
| (Brandon Severns & Richard Russell) | : |
| Skill Saw (Brandon Severns & Richard Russell) | : |
| Red Bill Refrigerator (Brandon Severns & Richard | : |
| Russell) | : |
| Two Torch Kits (Brandon Severns & Richard Russell) | : |
| Black 2007 Chrysler 300, PA LIC #HRW 9553, | : |
| VIN #2C3KA63HX7H659143 (Brandon Severns) | : |
| Black 2007 Kawasaki Zx-6r, PA LIC #2282s, | : |
| VIN #JKAZX4P197A022893 (Brandon Severns) | : |
| $19,899.60 Cash (Brandon Severns & Shae Duncan, | : |
| Smith & Wesson 9mm Handgun, | : |
| SER# D5D8641 (Owner Unknown) | : |
| Mossberg 12 Ga. Shotgun, | : |
| SER# P658202 (Owner Unknown) | : |
| Samsung TV (Brandon Severns & Shae Duncan) | : |
| LG TV (Brandon Severns & Shae Duncan) | : |
| Denon Stereo Receiver (Brandon Severns & Shae | : |
| Duncan) | : |

Two Xbox Game Consoles (Brandon Severns & Shae Duncan)  :
Playstation Game Console (Brandon Severns & Shae Duncan)  :
Mac Book Computer (Brandon Severns & Shae Duncan) :
Sony Cybershot Camera (Brandon Severns & Shae Duncan)  :
Two Wrist Watches (Brandon Severns & Shae Duncan)  :
:
Re: Richard Russell  :
:
Appeal of:  Richard Russell  :


Commonwealth of Pennsylvania  :
:
v.  : No. 1383 C.D. 2015
: Submitted: June 6, 2016
$603.45 Cash (Brandon Severns & Richard Russell)  :
$446.00 Cash (Brandon Severns & Richard Russell)  :
Contents For Store-Miscellaneous Drug Paraphernalia,  :
Smoking Devices and Accessories, Scales, Glass Vilas  :
(Brandon Severns & Richard Russell)  :
HP Touch Smart Computer  :
(Brandon Severns & Richard Russell)  :
HP Computer (Brandon Severns & Richard Russell)  :
HP Office Jet Printer  :
(Brandon Severns & Richard Russell)  :
Xbox 360 and Controllers  :
(Brandon Severns & Richard Russell)  :
Label Maker and Scanners  :
(Brandon Severns & Richard Russell)  :
Phillips TV (Brandon Severns & Richard Russell)  :
Two Shelving Units (Brandon Severns & Richard Russell)  :
Electronic Surveillance Equipment  :
(Brandon Severns & Richard Russell)  :
Skill Saw (Brandon Severns & Richard Russell)  :
Red Bill Refrigerator (Brandon Severns & Richard Russell)  :
Two Torch Kits (Brandon Severns & Richard Russell)  :
Black 2007 Chrysler 300, PA LIC #HRW 9553,  :
VIN #2C3KA63HX7H659143 (Brandon Severns)  :

Black 2007 Kawasaki Zx-6r, PA LIC #2282S,     :
VIN #JKAZX4P197A022893 (Brandon Severns)   :
$19,899.60 Cash (Brandon Severns & Shae Duncan,  :
Smith & Wesson 9MM Handgun,                :
SER# D5D8641 (Owner Unknown)            :
Mossberg 12 Ga. Shotgun,                    :
SER# P658202 (Owner Unknown)            :
Samsung TV (Brandon Severns & Shae Duncan)  :
LG TV (Brandon Severns & Shae Duncan)      :
Denon Stereo Receiver (Brandon Severns & Shae  :
Duncan)                                           :
Two Xbox Game Consoles (Brandon Severns & Shae  :
Duncan)                                           :
Playstation Game Console (Brandon Severns & Shae  :
Duncan)                                           :
Mac Book Computer (Brandon Severns & Shae Duncan) :
Sony Cybershot Camera (Brandon Severns & Shae  :
Duncan)                                           :
Two Wrist Watches (Brandon Severns & Shae Duncan)  :
                                                    :
Re: Richard Russell                          :
                                                    :
Appeal of:  One Step Above, LLC              :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: July 28, 2016

        Richard Russell and One Step Above, LLC, a tobacco shop, appeal an order of the Court of Common Pleas of York County (trial court) issued on the Commonwealth's petition for forfeiture of the shop's entire inventory of 5,000 items.  The trial court granted the petition with respect to tobacco accessories it concluded were drug paraphernalia but denied the petition for the remaining inventory, which ranged from store shelving and computers to cash.  The appellants contend that the trial court erred in holding that the forfeited tobacco

accessories, which could be used for legitimate purposes, constituted drug paraphernalia. They also argue that the trial court's forfeiture imposed an excessive fine in violation of the Eighth Amendment to the United States Constitution. We reverse the trial court's order granting forfeiture of the tobacco accessories.

## Background

On January 8, 2013, the York County Drug Task Force arrested Brandon Severns in the parking lot of One Step Above for possession with intent to deliver marijuana.[1] Upon learning that Severns was part owner of One Step Above, the police obtained a search warrant to search the shop. Russell, the other owner, was present when police arrived and conducted their search; no drugs were found. Nevertheless, the police confiscated the store's inventory of approximately 5,000 items, including cash, televisions, video game systems, shelving units, a motorcycle, a refrigerator, T-shirts, and electronic surveillance equipment. Relevant to this appeal was the seizure of smoking devices, such as glass pipes, and tobacco accessories, such as scales, grinders, and torch kits.

The police charged Russell with the crime of delivery of drug paraphernalia in violation of Section 13(a)(33) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act).[2] It provides:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> * * *

---

[1] One Step Above is located at 855 North Adams Street, York, Pennsylvania.

[2] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-113(a)(33). Section 13(i) of the Drug Act makes the delivery of drug paraphernalia a misdemeanor. 35 P.S. §780-113(i).

2

(33) The delivery of, possession with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it would be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of this act.

35 P.S. §780-113(a)(33). The Drug Act defines drug paraphernalia, and it sets forth a test for determining whether an item of property meets the definition. Section 2 of the Drug Act states as follows:

"Drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act. It includes, but is not limited to:

(1) Kits used, intended for use or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived.

(2) Kits used, intended for use or designed for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances.

(3) Isomerization devices used, intended for use or designed for use in increasing the potency of any species of plant which is a controlled substance.

3

(4)  Testing equipment used, intended for use or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances.

(5)  Scales and balances used, intended for use or designed for use in weighing or measuring controlled substances.

(6)  Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use or designed for use in cutting controlled substances.

(7)  Separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from or in otherwise cleaning or refining marihuana.

(8)  Blenders, bowls, containers, spoons and mixing devices used, intended for use or designed for use in compounding controlled substances.

(9)  Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances.

(10)  Containers and other objects used, intended for use or designed for use in storing or concealing controlled substances.

(11)  Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injected controlled substances into the human body.

(12)  Objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marihuana, cocaine, hashish or hashish oil into the human body, such as:

(i)  Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens,

4

hashish heads or punctured metal bowls.

(ii)     Water pipes.

(iii)    Carburetion tubes and devices.

(iv)     Smoking and carburetion masks.

(v)      Roach clips; meaning objects used to hold burning material such as a marihuana cigarette, that has become too small or too short to be held in the hand.

(vi)     Miniature cocaine spoons and cocaine vials.

(vii)    Chamber pipes.

(viii)   Carburetor pipes.

(ix)     Electric pipes.

(x)      Air-driven pipes.

(xi)     Chillums.

(xii)    Bongs.

(xiii)   Ice pipes or chillers.

*In determining whether an object is drug paraphernalia, a court* or other authority *should consider*, in addition to all other logically relevant factors, statements by an owner or by anyone in control of the object concerning its use, prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance, the proximity of the object, in time and space, to a direct violation of this act, the proximity of the object to controlled substances, the existence of any residue of controlled substances on the object, direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know,

intend to use the object to facilitate a violation of this act, the innocence of an owner or of anyone in control of the object, as to a direct violation of this act should not prevent a finding that the object is intended for use or designed for use as drug paraphernalia, instructions, oral or written, provided with the object concerning its use, descriptive materials accompanying the object which explain or depict its use, national and local advertising concerning its use, the manner in which the object is displayed for sale, whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products, direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise, the existence and scope of legitimate uses for the object in the community, and expert testimony concerning its use.

35 P.S. §780-102 (emphasis added).

In addition to charging Russell criminally, the Commonwealth filed a petition for forfeiture of the 5,000 items seized in the search of One Step Above. The petition alleged that all of the seized property represented the proceeds of drug transactions or had been used to facilitate drug transactions and, thus, was forfeitable as derivative contraband. Russell filed an answer denying that any of the seized property was traceable to drug transactions or had been used to facilitate a drug transaction. To the contrary, the answer asserted that the seized items constituted the inventory of an entirely lawful tobacco shop.[3]

Russell waived his right to a jury trial and agreed to consolidate the trial on his criminal drug paraphernalia charge with the civil forfeiture petition. At trial, the Commonwealth dropped its claim that the seized property represented the proceeds of drug transactions or had been used to facilitate a drug transaction.

---

[3] One Step Above was granted permission to intervene in the forfeiture action.

6

Instead, the Commonwealth argued that all of the seized property constituted drug paraphernalia that was *per se* contraband.

At trial, Russell explained that Severns had resigned as a principal in One Step Above, leaving him the sole owner. Accordingly, the property listed as being owned by both Severns and Russell was now owned by Russell as sole principal of One Step Above.

Adam Bruckhart, a West Manchester Township police officer assigned to the York County Drug Task Force, testified for the Commonwealth. He stated that the task force learned that several pounds of marijuana were going to be delivered to "Severns, who operated a business in West York." Notes of Testimony, 7/1/2015, at 13 (N.T. __). That business was One Step Above, which is "advertised on the Internet as a tobacco and smoking accessory shop." N.T. 14. Following Severns' arrest, Officer Bruckhart entered the shop and quickly decided that a large part of the inventory consisted of drug paraphernalia. He then obtained a search warrant, which was executed shortly thereafter.

On cross-examination, Officer Bruckhart testified that he had been surveilling One Step Above for a year and had been inside prior to the search. He agreed there were signs posted throughout the store stating that the products offered for sale were for "tobacco use only." N.T. 26. He also acknowledged that other retail stores in York County sell glass pipes, bongs and grinders and that all of these items are used for smoking tobacco. He also testified that One Step Above sold tobacco and confirmed that police found no controlled substances in their search.

Russell Schauer, a detective with the Springettsbury Township Police Department, also assigned to the York County Drug Task Force, was qualified to

7

testify as an expert in the investigation of narcotics trafficking. He was part of the team that did the search and seized the 5,000 items about which he testified.

Detective Schauer described the vacuum sealed containers confiscated from One Step Above as "concealment containers." N.T. 35. He testified that "some people had grandmothers that used to keep cereal in [such] a container to keep the cereal fresh. Mainly, we always see it to keep marijuana fresh." *Id.* He stated that "hundreds" of bongs and vaporizers were seized, which can be used to ingest marijuana as well as tobacco. N.T. 38. Also confiscated were T-shirts with references to "seedless" and "joints" and air preservatives labelled "420," which he believed to be a reference to April 20th, a date commemorated by marijuana users. Detective Schauer acknowledged that "420" preservative can be used to store and preserve a variety of vegetable matter, including tobacco. This was also the case for the seized grinders. However, he opined that given "the combination of every piece of item" in the store, all of the seized property was drug paraphernalia intended for inhaling, ingesting or concealing marijuana. N.T. 47-48.

On cross-examination, Schauer agreed that there were legitimate purposes for all of those items that he described as drug paraphernalia. For example, the "420 Eliminator" can be used to eliminate tobacco smoke and the drug cleanser kits can cleanse tobacco from a person's system. N.T. 51. He doubted, however, that anyone would use these items for that purpose.

During the search, Schauer spoke with Russell, who was "very cooperative" and "appeared to be shocked." N.T. 53. Russell told Schauer that he used the kiln in the store to make the glassware that is for sale and that he tells everyone that the glass pipes are for tobacco use. Schauer acknowledged Russell's

8

artistry but testified that he believed that the glass items were produced for the purpose of ingesting marijuana.

Russell then testified. He explained that he opened One Step Above in 2012 after obtaining the appropriate township permits. Russell explained that he specifically advised the township of the nature of the business and of his plan to make glass pipes and glass water pipes at the store. Russell stated that he plans to teach glass blowing at the store. The store is advertised as a tobacco shop with accessories.

Russell requires all patrons to present identification to establish a legal age of 18 before making a purchase. A "for tobacco use only" sticker is affixed to every water pipe. N.T. 60. Russell stated that any customer that refers to drugs is immediately "kicked out" of the shop. N.T. 58. In fact, Russell explained that he believed that the patrons he heard from time to time making drug references were actually undercover officers. Russell's goal is to have a "nice clean glass shop of artwork and all that other nice stuff that comes along with it." N.T. 58-59.

Russell testified about the glass water pipes that he creates and sells for prices ranging from $25 to $6,000. He testified that he sells them for tobacco use, explaining that a water pipe filters out the tar in the tobacco and makes for a smoother smoking experience; likewise, a vaporizer prevents carcinogens from reaching the tobacco smoker's lungs. Russell's larger and more expensive water pipes are used exclusively as art. One of his customers, who has purchased several of Russell's water pipes, keeps them in a display case. Russell creates glass pendants, vases and perfume bottles, which are also available in the shop. The store sells glass bracelets for $200 by an artist who is teaching Russell how to make them.

9

Russell testified that he sells loose tobacco in the shop by the pound or half-pound. This requires the use of scales and grinders. "420 Preserve" is sold to keep the tobacco fresh because it starts to dry once exposed to air.

Russell testified about the other seized items. He explained that the T-shirts with the word "Seedless" emblazoned thereon referred to the manufacturer, not to marijuana. The urine cleansing products are considered a dietary supplement and are sold at health and nutrition retailers such as GNC. He further explained that other retail stores, such as Spencer's, sell marijuana growing books, marijuana baking books and T-shirts promoting marijuana and have done so for many years without incident. When Russell offered photographs of glass pipes, grinders and scales sold in other stores in the York area, the Commonwealth stipulated that other York County retailers sell these items.

### Trial Court Decision

The trial court found Russell not guilty of delivery of drug paraphernalia.[4] It explained its decision as follows:

---

[4] The trial court went through the 15-factor test in Section 2 of the Drug Act, 35 P.S. §780-102, to decide whether an item is drug paraphernalia. It found, by each factor, as follows:

First, the trial court found that all of the objects had a legitimate use. Second, Russell had no prior drug conviction. Third, there was no evidence of temporal or spatial proximity between the seized items and a violation of the Drug Act. Fourth, there was no evidence that controlled substances were near the items seized. Fifth, there was no evidence of any residue of controlled substances on the seized items. Sixth, the evidence of intent to deliver an item to facilitate a violation of the Drug Act consisted only of Russell's statement that people could use the items to smoke marijuana. Seventh, the trial court said nothing about whether Russell's lack of a criminal drug history weighed in favor of or against finding the seized items to be drug paraphernalia. Eighth, the trial court found that the store instructed that the items for sale were "for tobacco use only." Ninth, the trial court found that the items seized were labeled "for tobacco use only." Tenth, the trial court found that there was no national and local advertising to show that the seized items were paraphernalia. Eleventh, the trial court found that the store **(Footnote continued on the next page . . .)**

10

The standard is beyond a reasonable doubt, and while it may appear obvious to the Court and anybody looking at the items that they would be used by a person who would want to ingest them for drugs, we cannot conclude that the Commonwealth's evidence sustains its burden of proof beyond a reasonable doubt with that regard.

Trial Court Order, 7/1/2015, at 4. On the forfeiture, the trial court held as follows:

With regard to the miscellaneous drug paraphernalia, which we mean to include smoking devices and accessories, scales, glass vials, the burden of proof in a forfeiture action is by a preponderance of the evidence, and that, simply, is it more likely than not that these items would be used by a person for ingestion of drugs and is it more likely than not the owner had reason to believe that such was the case?

We conclude that the Commonwealth has established its burden; and, accordingly, we will direct that the item[s] indicated as "contents of store, miscellaneous drug paraphernalia, smoking devices, and accessories, scales, and glass vials" are subject to forfeiture.

*Id.* at 5. However, the trial court denied the forfeiture petition with respect to the remaining store inventory, such as cash, computers, T-shirts, video game systems, a television, electronic surveillance equipment, business bank accounts and

---

**(continued . . .)**

displays did not support a finding that the seized items were drug paraphernalia. Twelfth, the trial court found it was not clear that Russell was a licensed purveyor of tobacco products. Thirteenth, no evidence was offered to show the ratio of sales of the seized items to the total sales of the business enterprise. Fourteenth, the trial court found there were legitimate uses for the seized items. Fifteenth, the Commonwealth's expert showed there was a legitimate use for the seized items as well as an illegitimate use for ingestion of illegal drugs.

The trial court found that tobacco was not found in the search, but this is not supported by the record. Specifically, Officer Bruckhart testified that One Step Above was "advertised on the Internet as a tobacco and smoking accessory shop." N.T. 14. He was asked if tobacco was obtained during the search. He replied "I'd have to check our inventory list. There was likely tobacco for sale, but I'm not sure if we seized any or not." N.T. 29. Russell testified that there was tobacco in the store when it was searched.

11

shelving units.  It concluded that this property was part of a legitimate business enterprise and did not constitute either contraband or derivative contraband.

Russell appealed.[5]  Before this Court Russell raises two issues.  First, he argues that the trial court erred as a matter of law because the Commonwealth did not prove that the forfeited property was contraband or derivative contraband because there was no nexus established between that property and any illegal activity.  Second, he argues that the amount of the forfeiture exceeded the Eighth Amendment's prohibition against excessive fines.  U.S. CONST. amend. VIII.[6]

## Analysis

The Commonwealth filed its forfeiture petition pursuant to the act commonly referred to as the Controlled Substances Forfeiture Act, 42 Pa. C.S. §§6801-6802, which states, in relevant part, as follows:

> (a)  Forfeitures generally.--The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
> > (1)  *All drug paraphernalia*, controlled substances or other drugs which have been *manufactured, distributed, dispensed or acquired in violation of [the Drug Act]*.
> >
> > (2)  All raw materials, products and equipment of any kind which are used, or intended for use, in

---

[5] Our scope of review is limited to determining whether the trial court's findings are supported by substantial evidence, whether the trial court abused its discretion, or whether it committed an error of law.  *Commonwealth v. $17,182.00 U.S. Currency*, 42 A.3d 1217, 1219 n.3 (Pa. Cmwlth. 2012).

[6] It states:

> Excessive bail shall not be required, nor *excessive fines imposed*, nor cruel and unusual punishments inflicted.

U.S. CONST. amend. VIII (emphasis added).

> manufacturing, compounding, processing, delivering, importing or exporting any controlled substance or other drug in violation of [the Drug Act].
>
> (3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2).

42 Pa. C.S. §6801(a)(1)-(3) (emphasis added). In a forfeiture, the Commonwealth bears the initial burden of proving by a preponderance of the evidence that the drug paraphernalia to be forfeited was "distributed, dispensed or acquired in violation … of the [Drug Act]." *Id.* If the Commonwealth makes a *prima facie* case, the burden then shifts to the claimant of the property to show:

> (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.
>
> (2) That the claimant lawfully acquired the property.
>
> (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa. C.S. §6802(j). "Despite growing popularity as a means to battle against drug traffic, forfeitures are not favored in the law…." *Commonwealth v. 502-504 Gordon Street in the Ninth Ward of City of Allentown, County of Lehigh*, 607 A.2d 839, 842 (Pa. Cmwlth. 1992). As such, "statutes authorizing forfeiture are to be strictly construed." *Id.*

Russell argues that there is no evidence that any of the forfeited items constituted drug paraphernalia. No drugs were found in the store after a thorough

13

search. The forfeited items consist of glass pipes, scales and grinders that are sold by competitors without incident. They were intended by the seller to be used with tobacco, and the Commonwealth did not prove otherwise.

The Commonwealth responds that it is irrelevant that no drugs were found in the search of the store. Detective Schauer testified that the forfeited items were intended to ingest marijuana and, thus, constituted drug paraphernalia. The trial court, as fact finder, was free to reject Russell's testimony that he was selling items "for tobacco use only" and credit Schauer's contrary testimony that the items in the store were being sold for illegal drug purposes.

Drug paraphernalia is forfeitable contraband *per se*. However, the Commonwealth has the burden of proving that an item of personalty meets the legal definition of drug paraphernalia. Our sister appellate court has explained that:

> [t]he [Drug] Act includes a specific intent requirement to distinguish innocent transfers of multi-purpose items from illegal transfers of drug paraphernalia. *See Pennsylvania Accessories Trade Association v. Thornburgh*, 565 F. Supp. 1568, 1576 (M.D. Pa. 1983); *see also Hoffman Estates v. Flipside*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). *For an item to be classified as drug paraphernalia, the prosecution must establish that the person charged with violating the Act had the specific intent that the item he possessed or delivered be used with controlled substances.*

*Commonwealth v. Lacey*, 496 A.2d 1256, 1259-60 (Pa. Super. 1985) (emphasis added). In its Rule 1925(a) opinion[7] the trial court concluded that

---

[7] Pennsylvania Rule of Appellate Procedure 1925(a) requires, in relevant part:

(a) Opinion in support of order.

**(Footnote continued on the next page . . .)**

14

the Commonwealth was able to show that Mr. Russell knew or should have known that a substantial number of people purchasing his glass bongs and pipes were going to use them for an unlawful purpose, such as smoking marijuana.

Trial Court 1925(a) op. at 5. The trial court reasoned that the proximity of these items to such items as T-shirts referring to marijuana demonstrated that Russell "more likely than not knew that his products could be used for the ingestion of marijuana." *Id*. at 8.

Both parties, the Commonwealth and Russell, the claimant of the property, acknowledged that the forfeited tobacco accessories could be used either to ingest tobacco or to ingest marijuana. The dispositive question is when a product with a dual purpose will be found to constitute unlawful drug paraphernalia.

In *Holt's Cigar Company, Inc. v. City of Philadelphia*, 10 A.3d 902 (Pa. 2011), our Supreme Court discoursed on the meaning of "drug paraphernalia" in the Drug Act. At issue in *Holt's Cigar* was a Philadelphia ordinance that prohibited the sale of cigar or cigarette rolling papers; cigars or cigarettes sold singly or in packages of fewer than three; certain flavored tobacco items and "any tobacco item that can be considered 'drug paraphernalia' [as defined by the ordinance]." *Id.* at 910. The ordinance made it unlawful to sell cigar and cigarette

---

**(continued . . .)**

1) *General rule.*--Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

PA. R.A.P. 1925(a)(1).

wrappings because they can be used with marijuana. Several tobacco shops and distributors challenged the ordinance, asserting that

> the General Assembly's inclusion of a *scienter* requirement in the crimes established by 35 P.S. §780-133(a)(33) [relating to drug paraphernalia] preempt[ed] [the Philadelphia ordinance], which impose[d] civil penalties for the sale of enumerated products without requiring a showing of seller's intent[.]

*Id*. at 906. Our Supreme Court examined the 15-part test set forth in Section 2 of the Drug Act for determining whether an item constitutes drug paraphernalia. It concluded that this test expressed the intention of the legislature to exempt the sale of items with a legitimate purpose from the punitive effects of the Drug Act. The legislature also established that whether a particular item satisfies the test for drug paraphernalia is a determination to be made by the court

> which should consider all relevant factors, including legitimate uses for the item; the intent of and statements by the item's owner; how the item is displayed for sale; and whether the owner is a legitimate supplier, such as a licensed distributor or dealer of tobacco products. The [Drug] Act recognizes that some drug paraphernalia have legitimate as well as illegitimate uses, and, in contrast to the [Philadelphia] ordinance, one of the [Drug] Act's implicit objectives is to *not* penalize those who sell dual-use items for legitimate uses.

*Id*. at 912 (emphasis in original) (footnote omitted). The *sine qua non* of drug paraphernalia is the seller's knowledge that a particular dual-use item has been or will be used only for an illegal purpose:

> *A seller of a dual-use item violates the [Drug] Act only if he or she knows or reasonably should know that the dual-use item is to be used for an illegal, drug-related purpose.* In contrast, a seller of certain dual-use items violates the [Philadelphia] ordinance by merely engaging in the sale, with no consideration as to whether the item was sold for a legitimate use or for an

illegal, drug-related purpose, and no consideration of the seller's state of mind or intent.

The presence of a *mens rea* element in the statute and the absence of a *mens rea* element in the ordinance for the same proscribed conduct, *i.e.,* selling certain dual-use items, constitute an irreconcilable conflict between the two enactments. Although the ordinance does not stand as an obstacle to the primary purpose of the [Drug] Act, *i.e.,* to decrease the unauthorized use of controlled substances, the ordinance does contradict an implied objective of the [Drug] Act to protect those who sell dual-use items for legitimate purposes.

*Id.* at 913 (emphasis added) (footnote omitted).

The Supreme Court rejected the City's argument that there was no conflict between the Drug Act and the Philadelphia ordinance because the statute was enforced by criminal sanctions and the City's ordinance by civil fines. The Supreme Court held that the Drug Act protects "those who sell dual-use items for legitimate purposes." *Id.* For a dual-use item to be drug paraphernalia, there must be *scienter*. The Court explained:

The City further suggests that the General Assembly was simply silent as to the possible imposition of *per se* liability for the delivery of dual-use items … [and] such silence should not be interpreted as a legislative intent to prohibit local regulation of the sale of dual-use items in a manner free of a scienter requirement. Again, we cannot agree with the City[.]… With regard to offenses involving delivery of drug paraphernalia, the General Assembly was far from silent as to the *mens rea* element. *The [Drug] Act expressly requires that an offender know or reasonably should know that the drug paraphernalia would be used in conjunction with a controlled substance in violation of the [Drug] Act; thus, a seller of a dual-use item for legitimate purposes is protected from any penalty under the [Drug] Act*.

*Id.* at 913-14 (emphasis added and internal citation omitted).

17

The Supreme Court held that the City's ordinance, which sought to prohibit the sale of dual-use products, was pre-empted by the Drug Act, which exempts dual-use items from any penalty. Further, to prove that a particular dual-use item is drug paraphernalia requires proof that the seller "knows or reasonably should know that the dual-use item is to be used for an illegal, drug-related purpose." *Holt's Cigar*, 10 A.3d at 913.

Here, the Commonwealth's witnesses conceded that the glass pipes, scales, grinders, and torch kits were dual-use items that could be used for a legitimate purpose. The trial court held that they were drug paraphernalia because Russell "knew or should have known that his products *could* be used for unlawful purposes" and "more likely than not knew that his products *could* be used for the ingestion of marijuana." Trial Court 1925(a) op. at 7-8 (emphasis added). These findings are inadequate, as a matter of law, to prove the dual-use products were drug paraphernalia. Every dual-use item has the potential to be used for an unlawful purpose. Sandwich bags that keep peanut butter and jelly sandwiches fresh can also keep marijuana fresh. That potential does not make a sandwich bag drug paraphernalia. More is needed. The Commonwealth must prove that the seller of the sandwich bags knows, or should know, that a particular box of sandwich bags will be used for marijuana, not sandwiches.

Here, the record lacks any evidence of Russell's *mens rea*. Had controlled substances been found at the store, the result may have been different. Had Russell offered a buyer (such as an undercover police officer) advice on which container does a superior job of keeping marijuana fresh, the result may have been different. *Holt's Cigar* established that the sale of dual-use items is a lawful activity that has been protected by the legislature in the Drug Act; *a fortiori*, the

18

sale of dual-use items is an activity beyond forfeiture, which requires an offense of the Drug Act. Absent a connection to an actual violation of the Drug Act, as opposed to a potential violation, the items seized by the York County Drug Task Force were not drug paraphernalia. That the Commonwealth established that the forfeitable items had a dual use was not enough to make them drug paraphernalia under the Drug Act.[8]

## Conclusion

We affirm the trial court's order to the extent that it denied the Commonwealth's forfeiture petition for some of the inventory and we reverse to the extent that the trial court granted the Commonwealth's petition for forfeiture of tobacco accessories. We remand to the trial court to enter an order granting the return of all of the property it identified as belonging to Russell and One Step Above.[9]

_____
MARY HANNAH LEAVITT, President Judge

---

[8] Because the Commonwealth did not establish the property was forfeitable as drug paraphernalia, there is no need to address the Eighth Amendment claim raised by Russell and One Step Above.

[9] Pointedly, the trial court only addressed the forfeiture of items owned solely by Russell or by both Severns and Russell as part of One Step Above. Additional items seized are listed in the petition for forfeiture as "owner unknown" or as belonging solely to Severns or by Severns and a third party. Russell and One Step Above have not made a claim that they are entitled to this property. Thus, these items are not part of their appeal to this Court.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania | : |
| | : |
| | : |
| v. | : No. 1382 C.D. 2015 |
| | : |
| | : |
| $603.45 Cash (Brandon Severns & Richard Russell) | : |
| $446.00 Cash (Brandon Severns & Richard Russell) | : |
| Contents For Store-Miscellaneous Drug Paraphernalia, | : |
| Smoking Devices and Accessories, Scales, Glass | : |
| Vilas (Brandon Severns & Richard Russell) | : |
| HP Touch Smart Computer | : |
| (Brandon Severns & Richard Russell) | : |
| HP Computer (Brandon Severns & Richard Russell) | : |
| HP Office Jet Printer | : |
| (Brandon Severns & Richard Russell) | : |
| Xbox 360 and Controllers | : |
| (Brandon Severns & Richard Russell) | : |
| Label Maker and Scanners | : |
| (Brandon Severns & Richard Russell) | : |
| Phillips TV (Brandon Severns & Richard Russell) | : |
| Two Shelving Units (Brandon Severns & Richard | : |
| Russell) | : |
| Electronic Surveillance Equipment | : |
| (Brandon Severns & Richard Russell) | : |
| Skill Saw (Brandon Severns & Richard Russell) | : |
| Red Bill Refrigerator (Brandon Severns & Richard | : |
| Russell) | : |
| Two Torch Kits (Brandon Severns & Richard Russell) | : |
| Black 2007 Chrysler 300, PA LIC #HRW 9553, | : |
| VIN #2C3KA63HX7H659143 (Brandon Severns) | : |
| Black 2007 Kawasaki Zx-6r, PA LIC #2282s, | : |
| VIN #JKAZX4P197A022893 (Brandon Severns) | : |
| $19,899.60 Cash (Brandon Severns & Shae Duncan, | : |
| Smith & Wesson 9mm Handgun, | : |
| SER# D5D8641 (Owner Unknown) | : |
| Mossberg 12 Ga. Shotgun, | : |
| SER# P658202 (Owner Unknown) | : |
| Samsung TV (Brandon Severns & Shae Duncan) | : |
| LG TV (Brandon Severns & Shae Duncan) | : |
| Denon Stereo Receiver (Brandon Severns & Shae | : |
| Duncan) | : |

| | |
|---|---|
| Two Xbox Game Consoles (Brandon Severns & Shae Duncan) | : |
| | : |
| Playstation Game Console (Brandon Severns & Shae Duncan) | : |
| | : |
| Mac Book Computer (Brandon Severns & Shae Duncan) | : |
| Sony Cybershot Camera (Brandon Severns & Shae Duncan) | : |
| | : |
| Two Wrist Watches (Brandon Severns & Shae Duncan) | : |
| | : |
| Re: Richard Russell | : |
| | : |
| Appeal of: Richard Russell | : |
| | |
| Commonwealth of Pennsylvania | : |
| | : |
| v. | : No. 1383 C.D. 2015 |
| | : |
| $603.45 Cash (Brandon Severns & Richard Russell) | : |
| $446.00 Cash (Brandon Severns & Richard Russell) | : |
| Contents Fo Store-Miscellaneous Drug Paraphernalia, | : |
| Smoking Devices and Accessories, Scales, Glass Vilas | : |
| (Brandon Severns & Richard Russell) | : |
| HP Touch Smart Computer | : |
| (Brandon Severns & Richard Russell) | : |
| HP Computer (Brandon Severns & Richard Russell) | : |
| HP Office Jet Printer | : |
| (Brandon Severns & Richard Russell) | : |
| Xbox 360 and Controllers | : |
| (Brandon Severns & Richard Russell) | : |
| Label Maker and Scanners | : |
| (Brandon Severns & Richard Russell) | : |
| Phillips TV (Brandon Severns & Richard Russell) | : |
| Two Shelving Units (Brandon Severns & Richard Russell) | : |
| Electronic Surveillance Equipment | : |
| (Brandon Severns & Richard Russell) | : |
| Skill Saw (Brandon Severns & Richard Russell) | : |
| Red Bill Refrigerator (Brandon Severns & Richard Russell) | : |
| Two Torch Kits (Brandon Severns & Richard Russell) | : |
| Black 2007 Chrysler 300, PA LIC #HRW 9553, | : |
| VIN #2C3KA63HX7H659143 (Brandon Severns) | : |

Black 2007 Kawasaki Zx-6r, PA LIC #2282S,                                  :
VIN #JKAZX4P197A022893 (Brandon Severns)                     :
$19,899.60 Cash (Brandon Severns & Shae Duncan,           :
Smith & Wesson 9MM Handgun,                                            :
SER# D5D8641 (Owner Unknown)                                       :
Mossberg 12 Ga. Shotgun,                                                      :
SER# P658202 (Owner Unknown)                                       :
Samsung TV (Brandon Severns & Shae Duncan)               :
LG TV (Brandon Severns & Shae Duncan)                         :
Denon Stereo Receiver (Brandon Severns & Shae            :
Duncan)                                                                                  :
Two Xbox Game Consoles (Brandon Severns & Shae       :
Duncan)                                                                                  :
Playstation Game Console (Brandon Severns & Shae       :
Duncan)                                                                                  :
Mac Book Computer (Brandon Severns & Shae Duncan) :
Sony Cybershot Camera (Brandon Severns & Shae          :
Duncan)                                                                                  :
Two Wrist Watches (Brandon Severns & Shae Duncan)   :
                                                                                               :
Re: Richard Russell                                                               :
                                                                                               :
Appeal of: One Step Above, LLC                                        :

## **O R D E R**

AND NOW, this 28th day of July, 2016 the order of the Court of Common Pleas of York County, dated July 1, 2015, is AFFIRMED in part, REVERSED in part, and this matter is REMANDED to the trial court to enter an order in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge